UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ELVIA HEREDIA, | ) | No. CV 13-07072-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1.    Whether the Administrative Law Judge ("ALJ") properly

considered Plaintiff's subjective symptom testimony.
(JS at 4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE ALJ DID NOT PROPERLY EVALUATE PLAINTIFF'S CREDIBILITY**

**AS TO SUBJECTIVE SYMPTOMS**

The ALJ evaluated Plaintiff's severe impairments to include the following: bilateral carpal tunnel syndrome; GERD; fibromyalgia; sleep apnea; occasional constipation; breathing problems; and hypertension. (AR 14.)

The ALJ assessed that Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work. (AR 14-15.) He concluded that she cannot perform her past relevant work ("PRW") but can perform other work, thus rendering her not disabled. (AR 22-23.)

A hearing was held on November 15, 2011, at which time testimony was taken from Plaintiff, who was represented by counsel (not the same counsel who now represents her), and from a vocational expert ("VE"). (AR 29-56.)

There are a number of treating sources in this record. Plaintiff received treatment at UCLA Center East West Medicine commencing on October 23, 2008. (AR 271-275.) In an August 3, 2009 letter "To Whom It May Concern" from Dr. Taw, an assistant clinical professor at UCLA

School of Medicine, he reported that Plaintiff "presented with a fifteen year history of total body pain with a diagnosis of fibromyalgia." Dr. Taw briefly described the results of a physical examination and concluded that, "Given her medical history and the multiple tender points and trigger points found, her condition is consistent with a diagnosis of fibromyalgia and myofascial pain syndrome." Because, he stated, "fibromyalgia can be very debilitating," he indicated that as to Plaintiff, "Being in any position for prolonged periods can cause pain, whether it be lying, sitting, or standing, which will affect her overall ability to work." (Id.)

On February 1, 2012, Dr. Tremazi wrote a letter "To Whom It May Concern" describing Plaintiff, who, he indicated, had been followed in his clinic since June 9, 2010, having been sent by her primary care physician for continuing care for her fibromyalgia. Dr. Tremazi indicated that Plaintiff "continues on multiple medications, and that despite that, 'She was complaining of generalized pain 8/10, low back leg as well as abdominal pain on the right side where she did have a ct scan done, ...'" Dr. Tremazi opined that he did not believe Plaintiff could hold any "steady [work] position especially with her chronic pain, fibromyalgia, and difficulty in standing, walking, and laying flat." (AR 303.)

Plaintiff's own description of her condition is not inconsistent with the opinions of her treating physicians as to the types of pain experienced by fibromyalgia sufferers. Plaintiff testified she has pain in her shoulders, neck, right hip, both legs and lower back, and that at its worst, her hip and shoulder pain is rated as 8 out of 10. (AR 36, 37, 39, 40, 44 and 45.) She experiences numbness and tingling

in her right hand which sometimes becomes worse. (AR 38.) She is constantly fatigued due to sleep apnea, and that she only sleeps three to four hours a night. (AR 46.) Plaintiff was prescribed a CPAP machine. (AR 46.) She takes medication for pain, in addition to other symptoms. (AR 37 and 38.) She engages in pool therapy three times a week for fibromyalgia. (AR 42.) Her own assessment is that she can sit for 10-20 minutes, stand for 20-25 minutes, and walk for 10 minutes. (AR 37.)

As to her activities of daily living ("ADL"), Plaintiff lives with her daughters and granddaughter; washes dishes sitting down with the help of her daughter; stays in the car for shopping while her daughter goes inside; and watches television 45 minutes a day. (AR 41-42.)

The ALJ depreciated Plaintiff's credibility through several pages of the decision. (AR 18-21.) The ALJ's conclusion was that, "'[t]here is lack of objective clinical and laboratory findings, which would reasonably be productive of the degree of limitation dysfunction as alleged by the claimant." (AR 19.) The Court must look to the stated reasons contained within the decision to determine if they are supported by substantial evidence, and more importantly, with regard to the credibility assessment, whether there are clear and convincing reasons articulated to support the conclusions. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.). Thus, the Court will review the reasons set forth in the decision.

The ALJ recited the medical evidence in some detail. (AR 15-19.) Despite the fact that there was no testimony from a medical expert at the hearing, the ALJ relied upon certain medically based evaluations, which the Court finds highly questionable. For example,

he stated that Plaintiff is "not described as a surgical candidate, nor is there any evidence he [sic] has required multiple hospital confinements for both physical and mental impairments, use of TENS unit, participation in a pain control clinic or other extensive or significant forms of treatment commonly prescribed for intense and debilitating pain." (AR 19.) In looking a these reasons, the first one - that Plaintiff is not described as a surgical candidate - is essentially a non sequitur, because there is absolutely no evidence in this record, or of which the Court is generally aware, that surgery is a recommended treatment for fibromyalgia. Next, with regard to hospital confinement, again, there is an absence of any evidence in this record which would substantiate a conclusion by the ALJ that hospital confinement would demonstrate the existence of pain which accompanies fibromyalgia. The same is true for the use of a TENS unit, as to which there is no discussion in any part of this AR. Finally, critiquing Plaintiff for failing to participate in a pain control clinic is quite unresponsive to this record, which demonstrates that Plaintiff has sought treatment in various facilities for her fibromyalgia over a period of years. She has been prescribed, and has taken, numerous medications to try to treat her condition, and she participates in pool therapy, which she admitted sometimes helps.

It is also significant to the Court that Plaintiff was never referred to a specialist, such as a rheumatologist, for a consultative examination ("CE") in connection to her fibromyalgia. She received an internal medicine examination from Dr. Gupta on December 14, 2009 at the request of the Department of Social Services, who practices internal medicine. (AR 264-269.) Apparently, Plaintiff did not articulate to Dr. Gupta that she suffered from fibromyalgia, and Dr.

Gupta did not analyze this condition, although there is no real doubt that at that time, Plaintiff suffered from fibromyalgia. Indeed, while the ALJ assessed that Plaintiff has fibromyalgia as a severe impairment, he faulted her credibility for not mentioning that she suffered from this condition during her internal medicine CE. (See AR at 20.)

Despite the obvious fact that the ALJ did review the evidence in the record, it does not appear that this review was accompanied by a sophisticated understanding of fibromyalgia. In referencing a lack of surgical intervention, or failure to use a TENS unit, or failure to participate in pain management clinics, the ALJ reflected a misunderstanding of fibromyalgia by requiring objective evidence for a disease that often eludes such measurement. (See Benecke v. Barnhart, 379 F.3d 587, 594, citing Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003). As the Circuit Opinion in Benecke succinctly put it, "Sheer disbelief is no substitute for substantial evidence." (Id.)

The Court is equally unpersuaded by the ALJ's belief that Plaintiff's ADL serves to refute her credibility. Indeed, what the record contains is a description of very limited types of activities which do not have any apparent inconsistency with a person suffering from the type of pain that accompanies fibromyalgia.

The ALJ's rejection of treating source Dr. Tremazi, based on the ALJ's views that treatment visits have been relatively infrequent, and that for that reason Dr. Tremazi did not obtain a longitudinal picture of the medical condition (AR 21-22) does not have persuasive impact on this Court. Dr. Tremazi indicated that Plaintiff had been followed in his clinic for almost two years when he wrote a letter on February 1,

2012 describing her treatment, including his own administration of medication. (AR 303.) If the ALJ doubted that Dr. Tremazi was truly a treating source, then he should have re-contacted Dr. Tremazi to determine the full extent of the treatment relationship. In any event, the fact is that Dr. Tremazi's conclusions echo those of other treating physicians, such as Dr. Taw from UCLA.

The Court's conclusion is that the ALJ failed to articulate clear and convincing reasons to depreciate Plaintiff's credibility. Thus, credibility will need to be evaluated de novo at a new hearing.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: March 26, 2014                            /s/
                                        VICTOR B. KENTON
                                        UNITED STATES MAGISTRATE JUDGE